LEWIS, J.
Linda Smith (“claimant”) seeks review of the Judge of Compensation Claims’ (“JCC”) order modifying his initial order in which the JCC found claimant to be permanently and totally disabled as a re- *323 suit of a 1993 industrial accident. On appeal, claimant argues that the JCC erred in basing his findings of a mistake in a determination of fact and a change in condition upon surveillance video of claimant that was taken after the initial hearing and that was introduced by the employer/carrier (“E/C”) during the modification hearing and upon claimant’s felony convictions. Because the surveillance evidence was not relevant to the issue of whether the JCC made a mistake in a determination of fact, and because claimant’s felony convictions introduced during the modification hearing constituted cumulative evidence that could have been discovered pri- or to the initial hearing and entry of the initial order, we agree that the JCC erred in basing his finding of a mistake in a determination of fact upon such evidence and reverse the modification order on this ground. As we reverse the modification order on this ground, we remand for further consideration with directions that the JCC reconsider the surveillance evidence in evaluating whether a change in claimant’s condition has occurred in view of our ruling that the JCC erred in finding a mistake in a determination of fact.

FACTUAL AND PROCEDURAL BACKGROUND

Following the initial hearing, which was conducted on February 8, 2001, the JCC, who found claimant to be truthful and credible, determined that claimant was permanently and totally disabled in an order dated March 7, 2001, which we affirmed. See Polk County BOCC, et al. v. Smith, 842 So.2d 116 (Fla. 1st DCA 2003). On October 8, 2001, the E/C filed a petition to modify the JCC’s initial order, alleging that they had newly discovered evidence that indicated that claimant’s physical abilities and emotional status were radically different from that which she testified to during the initial hearing. During the modification hearing, which the JCC conducted on February 28, 2002, the E/C presented the JCC with video surveillance of claimant that had been taken after the initial hearing on ten different days from February 28, 2001, through September 29, 2001. In the modification order, the JCC set forth that the surveillance videos showed claimant sitting and walking with ease, getting up from a sitting position on the ground with no difficulty, standing for a long period of time while braiding hair, raking the yard for a long period of time with “great vigor,” and engaging in other activities inconsistent with her testimony at both trials.
Over claimant’s objection, the E/C also introduced a certified copy of claimant’s 1997 felony convictions at the modification hearing. When asked by the JCC why they did not raise claimant’s prior convictions at the initial hearing, the E/C’s counsel replied that she really did not have an explanation. According to counsel, claimant’s credibility was not so put into issue at the initial hearing as the E/C were attempting to do at the modification hearing.
Dr. Baker, an orthopedic surgeon who testified at the initial hearing, testified via deposition that he reevaluated claimant on January 7, 2002. During this visit, claimant informed Dr. Baker that she still had back pain and could not work or participate in athletics. Her pain was aggravated by walking, standing, and sitting. Claimant could, however, walk one or two blocks. Dr. Baker found that claimant walked with an antalgic gait on her left side, that she could not heel walk, and that she had a full range of motion in her lumbar spine, hips, and knees. Claimant also had a decreased sensation on her left side at L5. Dr. Baker determined that claimant’s symptoms corresponded with *324 his objective findings, as he had done after claimant’s first evaluation. He again diagnosed claimant as having a failed back surgery.
As to the surveillance videos, which Dr. Baker watched in their entirety, his observations of the tapes did not change his prior opinion that claimant could not engage in light-duty work on a continuous and uninterrupted basis. According to Dr. Baker, the surveillance showed claimant limping on her left side. Claimant’s behavior of rocking back and forth, which Dr. Baker viewed as a pain behavior, went along with claimant’s story that she felt better when she flexed. Regarding claimant’s raking of her yard, Dr. Baker testified that she was not using her back at all; claimant’s ability to flex forward matched her physical examination. Dr. Baker further testified that instead of sitting for long periods of time, claimant’s behavior of being on her feet and moving around matched her symptoms. He did not see anything on the tapes that he did not see during claimant’s first examination. With regard to claimant’s hair braiding, Dr. Baker testified that claimant shifted positions frequently. He ultimately testified that he saw nothing on the videos that was inconsistent with his examinations of claimant.
Dr. Gonzalez, a medical doctor specializing in psychiatry who also testified at the first hearing, testified via deposition that he reevaluated claimant on January 15, 2002. According to Dr. Gonzalez, surveillance tapes are a weak point for him because a claimant’s behavior may depend on how he or she is feeling on a particular day, the medications that the claimant took that day, or even the weather. In other words, such videos tell psychiatrists very little.
After viewing the videos, Dr. Gonzalez testified that none of his previous opinions had changed, including his opinions that claimant was depressed and that a job search would have been futile as claimant could not perform any work on a continuous and uninterrupted basis. He further opined that claimant remained the same from a psychiatric standpoint. On the videos, Dr. Gonzalez observed claimant limping and holding her back while walking, which, according to him, is not a routine way of walking. With regard to claimant’s braiding of the man’s hair, Dr. Gonzalez testified that he thought such behavior was healthy, in that it kept claimant socializing. This socializing did not diminish Dr. Gonzalez’ assessment of depression. Moreover, such behavior “fit” with a ten percent impairment rating.
Dr. Martinez, claimant’s neurologist who testified at the initial hearing, testified via deposition that he reevaluated claimant on February 2, 2002. During this visit, claimant was still complaining of low back pain radiating down both of her legs with tingling in her legs and feet. She still complained of sleep problems as well. Dr. Martinez observed claimant walking “fairly normal.” He testified that she still had tenderness in her back with muscle swelling. According to Dr. Martinez, there had not been a substantial change in claimant’s condition as compared with her 1999 visit.
As to his previous four visits with claimant, Dr. Martinez testified that he had noticed a variation in claimant’s pain level from day to day; she had good days and bad. On a good day, Dr. Martinez opined that claimant could possibly walk without a limp, bend down, or sit on the ground. When questioned about his reaction to the surveillance videos, Dr. Martinez testified that he saw no action that was inconsistent with claimant’s examination. On the days in question, claimant could have been having a good day based upon a good night’s sleep, little or no activity on the previous *325 days, or anti-inflammatory drugs. According to Dr. Martinez, his previous opinions that claimant could not engage in light-duty work on a continuous and uninterrupted basis and that she suffered from a sixteen percent impairment rating had not changed after his viewing of the tapes.
Dr. Weller, a medical doctor who specializes in psychiatry and who testified during the initial hearing, testified via deposition that he reevaluated claimant on February 15, 2002. With regard to his opinion on the video surveillance, Dr. Weller testified that it showed what claimant had told him personally; there was nothing there that was new. Nor did the tapes contradict claimant’s medical history or his reports. Dr. Weller still opined, within a reasonable degree of medical certainty, that claimant suffered from depression and was not capable of engaging in work from a psychiatric standpoint.
Dr. McCrane, a medical doctor specializing in psychiatry who first evaluated claimant on January 29, 2002, testified via deposition that he viewed the video tapes before seeing claimant. Based upon his testing during claimant’s visit, Dr. McCrane diagnosed claimant as suffering from severe depression. According to Dr. McCrane, claimant also suffered from some histrionic personality traits.
During the modification hearing, claimant, when questioned as to her activities on the videos, repeatedly stated that those are all things that she “tries” to do. Claimant also testified that her pain level varies from day to day. Consistent with her previous testimony, claimant testified that she has problems sleeping and wakes up every hour. When asked if there was any type of work that she could do, claimant replied, “I would try to do anything.” She then testified that she did not think that she could work every day because there are days in which she cannot get out of bed.
Gerri Pennachio, the vocational expert who also testified at the initial hearing, next testified. Pennachio reevaluated claimant on January 11, 2002. Pennachio testified that claimant told her that she gets out of bed around 11:00 a.m. and does not sleep for more than an hour at a time. She does some fight straightening up and tries to do a little yard work. She also occasionally goes shopping, visits neighbors, and walks in the evenings. According to Pennachio, claimant had told her “pretty much the same thing” during her initial evaluation.
Pennachio further testified that when she saw the videos, she was astonished because of how dramatic claimant had been during her assessments. Claimant looked much better on the videos than Pennachio would have expected. According to Pennachio, she noticed only one or two days in which claimant exhibited any pain behaviors. To Pennachio, the tapes demonstrated a contradiction in claimant’s behavior. However, based on claimant’s medical information and reports, Penna-chio testified that she had not changed her initial opinion that claimant could not obtain or maintain any employment on a continuous and uninterrupted basis. Pen-nachio further testified that, from a physical standpoint, if claimant was able to do some activity every day, she could probably work part-time in a fight-duty job. However, her conclusion that claimant ultimately could not work was based on claimant’s psychiatric condition. Penna-chio testified, within a reasonable degree of vocational certainty, that there had been no change in claimant’s condition because no doctor had released claimant for work.
In the JCC’s modification order, the JCC noted that claimant displayed sub *326 stantial pain behavior at the initial hearing. According to the JCC, the video surveillance showed that claimant was capable of substantially greater activity than that which she displayed at the initial hearing. Because the surveillance was conducted on numerous days over a period of several months, the JCC found that it was sufficient for him to reach a fully informed conclusion regarding claimant’s physical capabilities. The JCC concluded that, taken as a whole, the videos indicated that claimant was not credible in her live testimony at both hearings and was not forthcoming. During the modification hearing, the JCC observed that claimant showed no physical problems until she took the stand to testify, where she displayed great pain behavior, cried, and, at one point, got down on her knees and leaned against the witness stand.
In finding the physicians’ testimony to be inconsistent with the actual activities he observed on the videos, the JCC rejected the testimony. Because claimant engaged in activities with others while talking and laughing, the JCC determined that claimant’s statements to her psychiatrists were inconsistent with her behavior. The JCC also rejected Pennachio’s testimony because of her reliance on the physicians’ testimony.
The JCC concluded that he made a mistake in a determination of fact at the initial hearing. He specifically rejected his earlier finding that claimant was a truthful and credible witness. Therefore, he determined that claimant was not permanently and totally disabled at the time of the initial hearing. The JCC also found that there had been a change in claimant’s condition since the time of the first hearing as the videos clearly showed that claimant had made a substantial recovery from her 1993 injury. The JCC ordered that the initial order was thereby modified to reflect that claimant was not permanently and totally disabled as of the initial hearing, and that her claim for PTD benefits and permanent total supplemental benefits was denied. The JCC also denied claimant’s motion for attorney’s fees. This appeal followed.

ANALYSIS

Claimant argues that the JCC erred in granting the E/C’s petition to modify as the evidence produced at the modification hearing was no more than additional evidence on the issues that had been previously determined. Section 440.28, Florida Statutes (1993), provides, in pertinent part, as follows:
Upon a judge of compensation claims’ own initiative, or upon the application of any party in interest, on the ground of a change in condition or because of a mistake in a determination of fact, the judge of compensation claims may ... issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation or award compensation.
Section 440.28 was not intended to afford a claimant a vehicle to relitigate an identical issue that has been previously determined solely upon an increase in the quantum and probative force of evidence in support of a conclusion that is contrary to the conclusion reached in the prior determination. S. Bell Tel. & Tel. Co. v. Blackstock, 419 So.2d 360, 362 (Fla. 1st DCA 1982) (citing Hall v. Seaboard Mar. Corp., 104 So.2d 384, 387 (Fla. 1st DCA 1958)).
In limited situations, a petition based upon a mistake of fact may be brought when material evidence that adds something new becomes available after the entry of an order, which could not have been discovered at the time of the original hearing and entry of the original order. Blackstock, 419 So.2d at 362 (citing *327 Hughes v. Denny’s Rest., 328 So.2d 830, 838 (Fla.1976)) (other citation omitted); see also Alachua County Adult Bet. Ctr. v. Alford, 727 So.2d 388, 391 (Fla. 1st DCA 1999) (noting that the E/C had the burden of presenting the JCC with new evidence that could not have been discovered during the earlier proceeding). However, evidence that is merely cumulative to the evidence previously offered upon an identical issue and that adds nothing new is insufficient to show a mistake of fact. Blackstock, 419 So.2d at 362.
Here, according to the surveillance video that is part of the record on appeal, the first day of the E/C’s surveillance of claimant occurred on February 28, 2001, only twenty days after the initial hearing had been conducted, and only one week before the JCC entered his initial order. There is no record evidence that the E/C conducted any surveillance in preparation for the initial hearing, notwithstanding the fact that claimant’s industrial accident occurred in 1993, and that she was placed at MMI in 1994. Nor did the E/C present any evidence as to why they could not have conducted any surveillance video of claimant in the normal course of her life in support of their arguments at the initial hearing.
A petition based upon a mistake in a determination of fact may be brought when material evidence that adds something new becomes available after the entry of the order, which could not have been discovered at the time of the original hearing and entry of the original order. Blackstock, 419 So.2d at 362. Here, because the surveillance evidence did not exist prior to the initial hearing and entry of the initial order, it did not disclose claimant’s condition prior to these occurrences. Therefore, such evidence was not relevant to the issue of whether the JCC made a mistake in a determination of fact. Furthermore, the E/C cannot utilize the provisions in section 440.28 to relitigate the issue of claimant’s permanent and total disability based solely on an increase in the quantum and probative force of evidence in support of their argument, which is contrary to the JCC’s initial determination. See id. As such, the JCC erred in basing his finding of a mistake in a determination of fact upon the surveillance evidence.
Claimant also contends that the JCC erred in finding that he made a mistake in a determination of fact at the initial hearing based upon claimant’s 1997 criminal convictions admitted at the modification hearing, as they could have been discovered prior to the initial hearing. During the modification hearing, when questioned by the JCC as to why they had not introduced the convictions at the initial hearing, the E/C’s counsel replied that she really had no explanation. She then stated that claimant’s credibility was not so put into issue at the first hearing as the E/C were attempting to do at the modification hearing. However, while claimant’s criminal convictions were admissible for the purpose of determining claimant’s credibility at the modification hearing, because claimant’s criminal convictions could have been discovered prior to the time of the initial hearing and entry of the initial order, such evidence was not admissible for purposes of the JCC’s finding that he made a mistake in a determination of fact at the initial hearing. See Housing by Vogue v. Caswell, 421 So.2d 556, 558 (Fla. 1st DCA 1982) (holding that evidence regarding an individual’s job status could have been discovered at the time of the original hearing). Accordingly, because the JCC erred in basing his finding of a mistake in a determination of fact upon both the surveillance video and claimant’s criminal convictions, we reverse the modification order as to this finding.
*328 Turning now to the issue of a change in condition, the party claiming such a change must demonstrate by new and positive evidence that the claimant’s condition has changed so that the conditions that were the foundation of the prior order no longer operate. See Thatcher Glass Co. v. Joseph, 424 So.2d 68, 69 (Fla. 1st DCA 1982). Modification based upon a change in condition is distinguishable from modification for mistake of fact as an error or mistake of fact refers to the initial or former determination, while modification based upon a change in condition refers to events happening after an earlier determination or adjudication. See Agrico Chem. Co. v. Tucker, 511 So.2d 672, 673-74 (Fla. 1st DCA 1987). When ruling on a modification petition, it is appropriate in a proper case for a JCC to give greater weight to physical evidence and lay testimony than he or she accords to the experts’ scientific opinions. Jeffers v. Pan Am. Envelope Co., 172 So.2d 577, 578 (Fla.1965). This Court reviews the JCC’s modification as a result of a change in appellant’s condition for competent, substantial evidence. See Stevens v. Pursell’s Wrecker & Road Serv., 645 So.2d 13, 15 (Fla. 1st DCA 1994).
As to his determination of a change in appellant’s condition, the JCC found that claimant’s condition had changed since the time of the first hearing and that the surveillance videos clearly showed that claimant had made a substantial recovery from her work-related injury. The JCC then modified his initial order to reflect that claimant was not permanently and totally disabled as of the date of the initial hearing and that her claim for PTD benefits was denied. However, the JCC’s modification date is in conflict with the definition of a change in condition, which refers to events occurring after the initial determination, while a finding of a mistake in a determination of fact refers to the initial determination. See Tucker, 511 So.2d at 673-74.

CONCLUSION

Accordingly, because the JCC found both a mistake in a determination of fact and a change in condition, findings that appear to be inconsistent with each other, and because we conclude that the JCC erred in finding a mistake in a determination of fact, we reverse the modification order. As such, we remand for further consideration with directions that the JCC reconsider the surveillance evidence in evaluating whether a change in claimant’s condition has occurred in view of our ruling that the JCC erred in finding a mistake in a determination of fact. Upon remand, the JCC is free to use claimant’s criminal convictions in determining claimant’s credibility at the modification hearing. If, upon remand, the JCC concludes that appellant is no longer permanently and totally disabled warranting the termination of her PTD benefits, the JCC is directed to specify the date in which the change occurred for purposes of calculating claimant’s PTD benefits prior to such date.
REVERSED and REMANDED with directions.
BARFIELD and BROWNING, JJ., CONCUR.